UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Demetrius Redd,                      Civil No. 10-2030 (MJD/FLN)

        Petitioner,

v.                                          **REPORT AND RECOMMENDATION**

Joan Fabian, Commissioner of Corrections,

        Respondent.

_____

Petitioner, *Pro Se*.
Mark S. Rubin, Assistant St. Louis County Attorney, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by James Demetrius Redd ("Petitioner"). (ECF No. 1.) Respondent filed a response and memorandum in opposition to the petition. (ECF Nos. 7 and 8.) Petitioner filed a reply brief. (ECF No. 11.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**.

## I. BACKGROUND

On November 1, 2007, a jury convicted Petitioner of second and third degree sale of a controlled substance in violation of Minn. Stat. §§ 152.022 and 152.023. On December 3, 2007, he was sentenced to 98 months in prison. The Minnesota Court of Appeals affirmed Petitioner's convictions on June 2, 2009. *State v. Redd*, 2009 WL 1515272 (Minn. Ct. App. June 2, 2009). The Minnesota Supreme Court twice denied review on August 5 and September 29, 2009.

The undersigned accepts the facts of this case as stated by the Minnesota Court of Appeals:

> D.G. assisted Duluth Police Investigators Nicholas Lukovsky and Rodney Wilson in making a controlled-substance purchase from [Petitioner] at a candy shop that [Petitioner] owned. D.G. had assisted officers in previous controlled buys and was paid for her services. On this occasion, police had agreed to pay D.G. $1,000 if she was successful in purchasing crack cocaine from [Petitioner].
>
> After calling [Petitioner] and arranging to buy an eight-ball (3.5 ounces) of crack cocaine for $150, D.G. went to police headquarters, where she was fitted with an electronic monitoring device and given $150. Police officers brought D.G. to a prearranged location near the candy shop, and she walked from there to the candy shop. When D.G. got to the candy shop, there were customers there, so she waited until they left before discussing the crack cocaine purchase.
>
> An audiotape recording of the conversation between [Petitioner] and D.G. at the candy shop was played to the jury. [Petitioner] talked about getting some minutes for a cell phone that he planned to give to D.G. because he did not trust pay phones, which D.G. had been using to contact him. [Petitioner] then made some comments about some people who were in jail because they had been set up. [Petitioner] stated that he would be able to get out of jail on bail and that he would be back.
>
> [Petitioner] and D.G. drove to a gas station to buy minutes for the cell phone . . . . D.G. testified at trial that she gave [Petitioner] the money at the gas station and that he gave her crack cocaine when they got back to the candy shop. D.G. turned over 2.8 grams of crack cocaine to police.
>
> Later the same day, D.G. contacted [Petitioner] and asked to buy more crack cocaine. [Petitioner] told her to meet him in the alley behind the candy shop. Police again fitted D.G. with an electronic transmitting device and gave her another $150 to buy an eight-ball of crack cocaine. When D.G. met [Petitioner], he used some type of wand to check her for a wire. D.G. told [Petitioner] to leave her alone, saying that she was in a hurry because she had a ride waiting and was paranoid because police were out there. [Petitioner] persisted in trying to determine whether D.G. was equipped with a wire, so D.G. left without buying any crack cocaine.
>
> About 15 to 20 minutes later, D.G. made another attempt to buy crack cocaine from [Petitioner], this time equipped with a digital recorder but no wire. D.G. called [Petitioner] and arranged to meet him in an alley near the candy shop. D.G. met [Petitioner] in the alley and gave him the $150. [Petitioner] said that he wanted to see if D.G. was wired and instructed her to lift up her blouse. When she did, [Petitioner] searched her chest and stomach area and then gave her the crack cocaine. D.G. turned over 3.3 grams of crack cocaine to police.

*Redd*, 2009 WL 1515272 at *1-2.

On appeal, Petitioner primarily claimed that: (1) the district court abused its discretion by permitting the State to impeach him with prior convictions for the same crime as the charges for which he stood trial; and (2) the introduction of negative character evidence (that Petitioner was involved in domestic violence and had spent time in jail) was plain error that affected his substantial rights. *Redd*, 2009 WL 1515272 at *1. The Minnesota Court of Appeals rejected those arguments. The court found that the district court did not abuse its discretion in ruling that Petitioner's prior convictions would be admissible for impeachment purposes and that there was no plain error that affected his substantial rights with respect to the negative character evidence. In a *pro se* supplemental brief, Petitioner raised several additional arguments on appeal. Relying upon *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), Petitioner argued that D.G.'s testimony was not voluntary (and presumably therefore inadmissible). (*See* ECF No. 13.) The appellate court determined that her statement did not bear indicia of unreliability and that *Schneckloth* was inapplicable. *Redd*, 2009 WL 1515272 at *4. Petitioner further argued that he was denied the right to confront the person who signed the complaint against him. *Id.* Because Petitioner failed to support this claim with legal authority or argument, the court deemed it waived. *Id.* Accordingly, the Minnesota Court of Appeals affirmed Petitioner's convictions.

In the instant action, Petitioner raises four arguments in support of his petition for habeas relief. First, the prosecution failed to disclose the identity of the complaining witness (the signatory of the complaint) and thus violated his rights under the Confrontation Clause. Second, the district court in some way denied Petitioner his constitutional right to confront the informant by unlawfully and erroneously denying his discovery motion. Third, the trial court improperly

ruled that Petitioner could be impeached with his prior convictions. Fourth, the introduction of evidence related to Petitioner's previous acts of domestic violence and jail time constituted "plain error that affected his substantial rights." (ECF No. 1.) To some extent Petitioner raised the first, third and fourth claims on appeal to the Minnesota Court of Appeals.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard that governs this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours . . . .
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this

> Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 405, 413. The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

Therefore, a federal district court is not permitted to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*. Demonstrating actionable error requires that a petitioner, as a threshold matter, present a federal question in his petition for relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting

5

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

### III. LEGAL ANALYSIS

A.      **Petitioner Has Procedurally Defaulted On His Confrontation Clause Claims**

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982). To satisfy the exhaustion of state court remedies requirement, a prisoner must "fairly present" his or her claims to the highest available state court before seeking relief in federal court. *O'Sullivan*, 526 U.S. at 845. In order for a state court to have the opportunity to remedy alleged violations of a prisoner's federal rights, a prisoner must alert the state court that he has raised the claim under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995). The Eighth Circuit has stated: "To satisfy the 'fairly presented' requirement, [petitioner] was required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue' in the . . . state court." *Abdullah v. Groose,* 75 F.3d 408, 411-12 (8th Cir. 1996), quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993). When a prisoner has not exhausted his state court remedies for a particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim has been procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. *Id.* The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that a 'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995), quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

### 1. Confrontation of the Signatory of the Complaint

Petitioner first argues that he is entitled to habeas corpus relief because the signatory of the criminal complaint against him did not testify at trial. (ECF No. 1.) Specifically, Petitioner alleges that the failure of this individual to testify resulted in a violation of his rights under the Confrontation Clause. (*See* ECF No. 11.) Although Petitioner made reference to his "rights to confront his accusor" in his *pro se* supplemental brief to the Minnesota Court of Appeals, the appellate court concluded that Petitioner waived this claim by failing to support it with argument or legal authority. *Redd*, 2009 WL 1515272 at *4, citing *State v. Krosch*, 642 N.W.2d 713, 719–20 (Minn. 2002).

"In evaluating a petition for federal habeas corpus relief, a district court is precluded from considering any issue that a state court has already resolved on an independent and adequate state law ground. This includes cases in which the state judgment turns on an independent and adequate state procedural ground, such as a state court determination that a claim has been lost because of default." *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (citations omitted).

Because the Minnesota Court of Appeals failed to reach the claim on the merits, and because Petitioner has not demonstrated his innocence, or cause for the default and actual prejudice as a result of the alleged violation, this Court is precluded from considering the issue. *See Reagan*, 279 F.3d at 656.

### 2. Confrontation of the Informant

Petitioner argues that the district court denied him his "Constitutional right to confront [the] informant by unlawfully and erroneous denial [sic] of [his] Motion for Discovery concerning public data." (ECF No. 11.) While Petitioner inserted the legal question: "Was it plain error and did the district court abuse its descretion [sic] by denying [Petitioner's] motion for discovery?" into his *pro se* supplemental brief to the Minnesota Court of Appeals, Petitioner raised no argument on appeal related to his right to confront the informant. (ECF No. 11.)

To the extent Petitioner may have intended to simply challenge the trial court's denial of his motion for discovery as framed on appeal, Petitioner did not present this claim as a violation of federal law in his brief to the state court and has failed to raise a valid claim under the United States Constitution with respect to that ruling. The claim has been procedurally defaulted for the same reasons as described above. Furthermore, even had there been an implicit constitutional dimension to Petitioner's claim on appeal, the claim would still have been procedurally defaulted because Petitioner failed to "fairly present" the constitutional claim to the Court of Appeals, and the court failed to reach it on the merits.[1] *See O'Sullivan*, 526 U.S. at 845.

---

[1] To the extent that Petitioner may have conversely intended to raise only a confrontation issue with respect to the informant, the Court rejects this argument given that the informant, D.G., testified at trial. *See Redd*, 2009 WL 1515272 at *1.

Again, because the Minnesota Court of Appeals failed to reach the claim on the merits, and because Petitioner has not demonstrated actual innocence or cause for the default and actual prejudice as a result of the alleged violation, this Court is precluded from considering the issue. *See Reagan*, 279 F.3d at 656.

**B.     Evidentiary Rulings Did Not Deprive Petitioner of a Fundamentally Fair Trial**

State prisoners are entitled to habeas relief under 28 U.S.C. § 2254 only if their detention violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241(c); *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam). "A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995), citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, a federal court cannot disturb, on due process grounds, a state court's decision to admit prior bad acts evidence unless the admission of the evidence was "so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the] defendant of fundamental fairness." *McDaniel v. Lockhart*, 961 F.2d 1358, 1360 (8th Cir. 1992), citing *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir.1986); *Walters*, 45 F.3d at 1357. In order to make such a determination, the reviewing court must consider "the totality of the facts in the case and the fairness of the whole trial." *McDaniel*, 961 F.2d at 1360; *Hobbs,* 791 F.2d at 128.

**1.     Admission of Petitioner's Prior Bad Acts**

Petitioner argued on appeal that "the admission of statements in the audio recording by an unidentified individual referring to domestic violence and by [Petitioner] referring to his ability to make bail if arrested was plain error." *Redd*, 2009 WL 1515272 at *3. Here, he argues

that "the introduction of evidence that [P]etitioner was involved in domestic violence and had spent time in jail was plain error that affected his substantial rights." (ECF No. 1.)

Because questions concerning the admission of evidence are matters of state law, the review of such questions in a habeas corpus proceeding is limited to determining whether the petitioner's constitutional rights have been violated. *Amos v. Minnesota*, 849 F.2d 1070, 1073 (8th Cir.1988); *Hobbs*, 791 F.2d at127–28. "The inquiry is not whether the trial court erred in admitting the particular testimony, but whether the admissions resulted in a trial so fundamentally unfair as to deny [the petitioner] due process of law." *Rainer v. Dep't of Corrections*, 914 F.2d 1067, 1072 (8th Cir. 1990) (quotations omitted). In order for a court to grant a petition for a writ of habeas corpus, "the error must be so 'gross[,]' 'conspicuously prejudicial[,]' or otherwise of such magnitude that it fatally infected the trial and failed to afford [the petitioner] the fundamental fairness which is the essence of due process." *Id.*

Although Petitioner apparently did not object to the admission of the audio recording at trial, the appellate court addressed the argument on the merits. The Minnesota Court of Appeals concluded that, because it was "not apparent from the record that the jury was likely to have mistaken the unidentified speaker as [Petitioner]" and because Petitioner did not establish that a "single reference to a possible fight affected his substantial rights," there was no plain error in admitting the recording. *Redd*, 2009 WL 1515272 at *4. The court further concluded that the reference to "jail" and an inability to post bail applied to some other individuals, not Petitioner.

"In reviewing the state court decision, a fact determination is presumed to be correct and must be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)." *King v. Kemna*, 266 F.3d 816, 822 (8th Cir. 2001). Here, Petitioner has failed to rebut any factual findings of the state

courts with clear and convincing evidence. Moreover, any error in admitting the evidence was not "so gross" or "conspicuously prejudicial" so as to fatally infect the trial or deprive Petitioner of "the fundamental fairness which is the essence of due process." *See Rainer*, 914 F.2d at 1072. Thus, the admission of Petitioner's prior bad acts did not result "in a trial so fundamentally unfair as to deny [him] due process of law." *Id.*

### 2. Permitting Impeachment with Prior Convictions

Petitioner also argues that the trial court improperly ruled that, should he testify, the State could impeach him with his prior felony convictions (three convictions for controlled substance crimes and one conviction for receiving stolen property). *Redd*, 2009 WL 1515272 at *2. Ultimately, Petitioner opted not to testify at trial. *Id.* at *3. The Minnesota Court of Appeals expressly found that, applying the five factors[2] set forth in *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn. 1978), the district court did not abuse its discretion in ruling that Petitioner's prior convictions would be admissible for impeachment purposes. *Redd*, 2009 WL 1515272 at *3.

"It is axiomatic that when a defendant takes the stand in his own behalf he may be cross-examined with respect to prior felony convictions." *Montgomery v. United States,* 403 F.2d 605, 611 (8th Cir. 1968), *cert. denied* 396 U.S. 859 (1969). Moreover, the Supreme Court has held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce v. United States*, 469 U.S. 38, 43 (1984).

---

[2] These factors are: (1) the impeachment value of the prior crime; (2) the date of the conviction and the defendant's subsequent history; (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach); (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. *State v. Ihnot*, 575 N.W.2d 581 (Minn. 1998).

Here, Petitioner appears to challenge only the trial court's evidentiary ruling, which permitted the admission of his prior controlled substance convictions for impeachment purposes if he chose to testify. (*See* ECF No. 1.) Petitioner, however, has not argued that he was thus deprived of his constitutional right to testify on his own behalf and has failed to make out a constitutional claim for habeas review on this point.[3] *See Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990). Also notably, Petitioner did not make an offer of proof as to what his testimony would have shown to dispute the charges had he testified. *Redd*, 2009 WL 1515272 at *3. He has not demonstrated that his testimony would have rebutted the State's evidence or would have caused the jury to render a different verdict. Applying the standard described above, the district judge's ruling that Petitioner's prior convictions would be admissible for impeachment purposes did not deprive Petitioner of a fair trial or due process of law.

For the reasons articulated herein, the Court concludes that Petitioner is not in custody in violation of the Constitution, laws, or treaties of the United States; he is, therefore, not entitled to habeas relief pursuant to 28 U.S.C. § 2254(d).

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) be **DENIED**;

---

[3] Furthermore, Petitioner's motivation for not testifying is known only to his attorney and himself and thus there is simply no basis for concluding that the trial court's impeachment ruling effectively denied him of his right to testify.

2) This matter be **DISMISSED WITH PREJUDICE**; and

3) **JUDGMENT BE ENTERED ACCORDINGLY.**

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.


DATED: February 24, 2011          *s/ Franklin L. Noel*
                                  FRANKLIN L. NOEL
                                  United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 10, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.